IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM E. CURRY, | : |
| Plaintiff, | : CIVIL ACTION NO. 18-5444 |
| v. | : |
| CO MCCANN, WARDEN BYRNES, GEORGE W. HILL CORRECTIONAL FACILITY, and GEO GROUP, INC., | : |
| Defendants. | : |

**MEMORANDUM OPINION**

Smith, J.                                                                                                                            January 2, 2019

The *pro se* plaintiff has applied for leave to proceed *in forma pauperis* and has filed a complaint asserting claims under 42 U.S.C. § 1983 against a corrections officer, the warden of a county jail, the county jail, and a corporation that provides services for the county jail. Although not named in the caption, the plaintiff also asserts claims against the county's criminal investigations department. His allegations arise from an incident where the named corrections officer purportedly falsely claimed that the plaintiff had illegal drugs in his pants during a strip search, which led to criminal charges being filed against the plaintiff. The plaintiff also appears to allege that the corrections officer violated his constitutional rights because he placed the plaintiff in a cell with no toilet or running water for an unidentified period.

As discussed below, although the court will grant the application for leave to proceed *in forma pauperis*, the court must dismiss the plaintiff's claims against the county jail because it is not a proper defendant in a section 1983 action insofar as it is not a "person" subject to suit under the statute. In addition, the court must dismiss the claims against the county's criminal investigations department and the corporation providing services for the county jail because the

plaintiff has not alleged or identified a custom or policy that caused his purported constitutional violations. The court will also dismiss his claims against the warden because the plaintiff fails to allege how the warden violated his constitutional rights. Regarding the claims against the corrections officer, the court will dismiss any conditions of confinement claim because the allegations do not satisfy the pleading requirements for a claim under either the Eighth or Fourteenth Amendments. The court will allow the plaintiff to maintain a claim that the corrections officer violated his rights by falsely telling the criminal investigations department that drugs were found in the plaintiff's pocket, but must stay this specific action as it appears that the criminal charges arising from this incident are still pending disposition in the state court.

## I. ALLEGATIONS AND PROCEDURAL HISTORY

The *pro se* plaintiff, William E. Curry ("Curry"), filed a complaint, an application to proceed *in forma pauperis* (the "IFP Application"), and an inmate trust account statement that the clerk of court docketed on December 17, 2018. *See* Doc. Nos. 1−3. In the complaint, Curry purports to assert claims under 42 U.S.C. § 1983 against the defendants, C.O. McCann, Warden Byrnes, the George W. Hill Correctional Facility ("GWHCF"), and the Geo Group, Inc.[1] *See* Compl. at ECF p. 3.

Curry alleges that on the Saturday of Easter weekend 2017, C.O. McCann was in the process of stripping Curry when C.O. McCann discovered that there was paperwork and "clothing [i]n the bag."[2] *See* Compl. at ECF p. 4. C.O. McCann "walked out of the room to yell at inmate

---

[1] Although not listed in the caption as required by Rule 10(a) of the Federal Rules of Civil Procedure, Curry also identifies the CID Department ("CID") as a defendant in the body of the complaint. *See* Compl. at ECF p. 7.
[2] In the complaint, Curry alleges that these events occurred in 2016. *See* Compl. at ECF p. 4 ("George W [sic] Hill Facility on Easter Saterday [sic] 2016."). If Curry's allegation is accurate, the court would dismiss this matter in its entirety because the statute of limitations would bar the action. In this regard, the statute of limitations for section 1983 actions "is governed by the personal injury tort law of the state where the cause of action arose." *Wallace v. Kato*, 549 U.S. 384, 387 (2007). Since Curry's claims arose in Pennsylvania, the court would apply Pennsylvania's relevant limitations period, which in this case is two years. *See Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017) (stating that "[t]he statute of limitations applicable to § 1983 claims in Pennsylvania is two years" (citation omitted)).

2

workers, then asked [Curry] if [he] was one of [the] inmates running off at the mouth in [the] holding tank." *Id.* Curry said that he was not one of those inmates, and C.O. McCann "said that he had something for [Curry] and placed [him] in a cell with no running water or toilet where [Curry] stayed until [he] was placed in medical for withdraw[a]l from meth[a]done." *Id.*

Curry was released from GWHCF later that month.[3] *See id.* Two months later, his probation officer said that he had to "turn [himself] in to CID for a drug charge." *Id.* Curry then retained Attorney Haly to represent him, and she apparently turned him in to a judge and CID, where he was charged. *See id.*

On June 22, 2017, Curry was charged with (1) intentional possession of a controlled substance by a person not registered to possess it, 35 P.S. § 780-113(a)(16), (2) use or possession of drug paraphernalia, 35 P.S. § 780-113(a)(32), and (3) two counts of contraband/controlled substance, 18 Pa. C.S. § 5123(a). *See* Docket, *Commonwealth v. Curry*, No. CP-23-CR-6464-2017 (C.P. Delaware). Curry and Attorney Haly "requested video from [GWHCF and the state

---

This two-year limitations period "accrues when the plaintiff knew or should have known of the injury upon which [his] action is based." *Sameric Corp. of Del. v. City of Philadelphia*, 142 F.3d 582, 589 (3d Cir. 1998). "The cause of action accrues even though the full extent of the injury is not *then* known or predictable." *Wallace*, 549 U.S. at 391. In addition, the court could dismiss this action *sua sponte* based on the statute of limitations bar. *See Peele v. McLaughlin*, 641 F. App'x 111, 112 (3d Cir. 2016) (per curiam) (explain that even though "the statute of limitations is an affirmative defense [under Rule 8(c) of the Federal Rules of Civil Procedure], a district court may sua sponte dismiss a complaint under § 1915(e) where the defense is obvious from the complaint and no development of the factual record is required."; *Thornton v. Hens-Greco*, 629 F. App'x 251, 254 n.5 (3d Cir. 2015) (per curiam) (same); *Trimble v. Shaw*, 576 F. App'x 88, 90 (3d Cir. 2014) (per curiam) (same); *see also Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006) ("A complaint may be dismissed *sua sponte* under § 1915 based on an affirmative defense—such as statute of limitations—only when the defense is obvious from the face of the complaint and no further factual record is required to be developed." (quotations omitted)).

Although it appears that the statute of limitations would bar Curry's claims because he alleges that the incidents at issue occurred more than two years prior to the filing of this lawsuit, the court will not dismiss the action at this time because Curry is proceeding *pro se* and it appears that he is referencing the incorrect year. More specifically, and as discussed later in this opinion, Curry alleges in the complaint that he retained Lisa Haly, Esq. to represent him in defending against the criminal charges that were filed against him. *See* Compl. at ECF p. 4. A search of the publicly available criminal dockets in the Commonwealth of Pennsylvania reflects that Attorney Haly represented Curry on charges stemming from an offense date of April 15, 2017. *See* Docket, *Commonwealth v. Curry*, No. CP-23-CR-6464-2017 (C.P. Delaware). The court takes judicial notice that Easter in 2017 fell on April 16th. *See* https://www.calendar-12.com/holidays/easter/2017. Therefore, it appears that Curry's reference to 2016 is an error, and the court uses 2017 in its place.

[3] Curry alleges that he was released on a Wednesday, but he does not identify the date. *See* Compl. at ECF p. 4.

police] to show that [Curry did not] have any pockets, which C.O. McCann claimed so called drugs [were] in [his] back pocket." Compl. at ECF p. 4. In response to this request, the state police and GWHCF stated that they had taped over the video. *See id.* At some point, Curry and Attorney Haly learned that the "so called drugs [were] kept at [the] prison for 14 days before prison staff inform[ed] CID." *Id.* at ECF p. 5.

Curry's criminal proceedings relating to the Easter weekend incident appear to be still pending in the Court of Common Pleas of Delaware County. *See* Docket, *Commonwealth v. Curry*, No. CP-23-CR-6464-2017 (C.P. Delaware). Curry suggests that GWHCF and CID violated his due process rights under the Fourteenth Amendment because prison staff, in contravention of the GWHCF inmate handbook, questioned him despite his alleged violation of a state law. *See* Compl. at ECF p. 5. According to Curry, the handbook states that when a violation of state law occurs, "prison officials are limited to identifying and isolating the suspect until police investigators/CID arrive, [and] no further questioning of the inmate by prison staff is permitted." *Id.* Curry also alleges that CID violated his due process rights when it waited two months to charge him.[4] *See id.* He further claims that the "so called drugs w[ere] not given to CID for 14 days." *Id.* As relief, Curry is "seeking compensation or attorn[e]y fees, stress, time that [he] had to take off of work to go to court and time spent in prison," in an amount of $50,000. *Id.* at ECF p. 8.

## II. DISCUSSION

### A. The IFP Application

Regarding applications to proceed *in forma pauperis*,

> any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an

---

[4] It is unfortunately unclear which defendant violated his rights when CID waited two months to charge him. The court presumes that Curry is referencing CID as the applicable defendant.

> affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor.

28 U.S.C. § 1915(a)(1). This statute

> "is designed to ensure that indigent litigants have meaningful access to the federal courts." *Neitzke v. Williams,* 490 U.S. 319, 324, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Specifically, Congress enacted the statute to ensure that administrative court costs and filing fees, both of which must be paid by everyone else who files a lawsuit, would not prevent indigent persons from pursuing meaningful litigation. *Deutsch*[ *v. United States*, 67 F.3d 1080, 1084 (3d Cir. 1995)]. Toward this end, § 1915(a) allows a litigant to commence a civil or criminal action in federal court in [sic] *forma pauperis* by filing in good faith an affidavit stating, among other things, that he is unable to pay the costs of the lawsuit. *Neitzke,* 490 U.S. at 324, 109 S.Ct. 1827.

*Douris v. Middletown Twp.*, 293 F. App'x 130, 131-32 (3d Cir. 2008) (per curiam) (footnote omitted).

The litigant seeking to proceed *in forma pauperis* must establish that the litigant is unable to pay the costs of suit. *See Walker v. People Express Airlines, Inc.*, 886 F.2d 598, 601 (3d Cir. 1989) ("Section 1915 provides that, in order for a court to grant *in forma pauperis* status, the litigant seeking such status must establish that he is unable to pay the costs of his suit."). "In this Circuit, leave to proceed *in forma pauperis* is based on a showing of indigence. [The court must] review the affiant's financial statement, and, if convinced that he or she is unable to pay the court costs and filing fees, the court will grant leave to proceed *in forma pauperis*." *Deutsch*, 67 F.3d at 1084 n.5 (internal citations omitted).

Here, after reviewing the IFP Application and the inmate trust account statement, it appears that Curry is unable to pay the costs of suit. Therefore, the court will grant him leave to proceed *in forma pauperis*.[5]

---

[5] As a prisoner, Curry is obligated to pay the filing fee in installments in accordance with the PLRA. *See* 28 U.S.C. § 1915(b).

### B. Standard of Review of Complaints Under 28 U.S.C. § 1915(e)(2)(B)

Because the court has granted Curry leave to proceed *in forma pauperis*, the court must engage in the second part of the two-part analysis and examine whether the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or asserts a claim against a defendant immune from monetary relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i)–(iii) (providing that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that-- . . . **(B)** the action or appeal-- **(i)** is frivolous or malicious; **(ii)** fails to state a claim on which relief may be granted; or **(iii)** seeks monetary relief against a defendant who is immune from such relief"). A complaint is frivolous under section 1915(e)(2)(B)(i) if it "lacks an arguable basis either in law or fact," *Neitzke*, 490 U.S. at 325, and is legally baseless if it is "based on an indisputably meritless legal theory." *Deutsch*, 67 F.3d at 1085. As for whether a complaint is malicious, "[a] court that considers whether an action is malicious must, in accordance with the definition of the term 'malicious,' engage in a subjective inquiry into the litigant's motivations at the time of the filing of the lawsuit to determine whether the action is an attempt to vex, injure or harass the defendant." *Deutsch*, 67 F.3d at 1086. "[A] district court may dismiss a complaint as malicious if it is plainly abusive of the judicial process or merely repeats pending or previously litigated claims." *Brodzki v. CBS Sports*, Civ. No. 11-841, 2012 WL 125281, at *1 (D. Del. Jan. 13, 2012).

Concerning the analysis under section 1915(e)(2)(B)(ii), the standard for dismissing a complaint for failure to state a claim pursuant to this subsection is identical to the legal standard used when ruling on motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Rule 12(b)(6) standard to dismissal for failure to state claim under section 1915(e)(2)(B)). Thus, to survive dismissal, "a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556 (citation omitted). In addressing whether a *pro se* plaintiff's complaint fails to state a claim, the court must liberally construe the allegations set forth in the complaint. *See Higgs v. Att'y Gen.*, 655 F.3d 333, 339–40 (3d Cir. 2011) (explaining that "when presented with a *pro se* litigant, we have a special obligation to construe his complaint liberally" (citation and internal quotation marks omitted)).

### C. Analysis

To succeed on claims under section 1983, "a plaintiff must show a deprivation of a right secured by the Constitution and laws of the United States, and he must show that the deprivation was committed by a person acting under color of state law." *Bailey v. Harleysville Nat'l Bank & Trust*, 188 F. App'x 66, 67 (3d Cir. 2006) (per curiam) (citing *West v. Atkins*, 487 U.S. 42, 47 (1988)). The court will consider Curry's claims against each named defendant in turn.

#### 1. Curry's Claims Against GWHCF and the Geo Group, Inc.

Section 1983 provides in pertinent part as follows:

> Every **person** who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

*Id.* (emphasis added).

As evidenced by a review of the statute, section 1983 "applies only to 'persons.'" *Fraser v. Pa. State Sys. of Higher Educ.*, No. CIV. A. 92-6210, 1994 WL 242527, at *5 (E.D. Pa. June 6, 1994), *aff'd*, 52 F.3d 314 (3d Cir. 1995). Here, Curry attempts to directly assert a claim against GWHCF, the county prison for Delaware County. *See Regan v. Upper Darby Twp.*, Civ. A. No. 06-1686, 2009 WL 650384, at *4 (E.D. Pa. Mar. 11, 2009) (stating that "Delaware County Prison[ is] now known as the George W. Hill Correctional Facility"), *aff'd*, 363 F. App'x 917 (3d Cir. 2010). A county correctional facility, such as GWHCF, is not a "person" under section 1983. *See Ignudo v. McPhearson*, No. Civ.A. 03-5459, 2004 WL 1320896, at *2 (E.D. Pa. June 10, 2004) ("[Plaintiff] also names as a Defendant the George W. Hill Correctional Facility. The George W. Hill Correctional Facility is not a legal entity susceptible to suit."); *see also Lenhart v. Pennsylvania*, 528 F. App'x 111, 114 (3d Cir. 2013) (per curiam) (concluding that district court properly dismissed claims against county prison because even though "[a] local governmental agency may be a 'person' for purposes of § 1983 liability[, the county prison] is not a person capable of being sued within the meaning of § 1983") (internal citations omitted)); *Mincy v. Deparlos*, 497 F. App'x 234, 239 (3d Cir. 2012) (per curiam) (determining that district court properly concluded that county prison is not "person" within meaning of section 1983). Accordingly, the court will dismiss with prejudice Curry's claims against GWHCF.

Regarding Curry's claims against the Geo Group, Inc., to the extent that it provides services at GWHCF, it acts under color of state law. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978); *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583–84 (3d Cir. 2003) (acknowledging that entity contracted to perform medical services for county jail is state actor for purposes of section 1983); *French v. The GEO Grp., Inc.*, Civ. A. No. 18-CV-4312, 2018 WL 4929859, at *2 (E.D. Pa. Oct. 10, 2018) ("The GEO Group acts under color of state law by

providing services for the George W. Hill Correctional Facility."); *Regan*, 2009 WL 650384, at *3, n.5 ("For purposes of Plaintiff's § 1983 claims, Defendant GEO Group, a private company, was acting under the color of state law since it provided daily functional services for the Delaware County Prison."). If Curry is seeking to proceed with a section 1983 claim against the Geo Group, Inc., he must allege that it violated his constitutional rights because of a custom or policy that it adopted. *See Cephas v. George W. Hill Corr. Fac.*, Civ. A. No. 09-6014, 2010 WL 2854149, at *2 (E.D. Pa. July 20, 2010) (explaining that *pro se* prisoner plaintiff seeking to assert claim against Geo Group, Inc. must allege that institutional policy or custom caused violation of plaintiff's rights, and dismissing complaint because it did not contain any such allegations).

To assert a plausible claim under section 1983, Curry "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the applicable pleading standard. *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009) (citation omitted). A "policy" arises when a decision-maker possessing final authority issues an official proclamation, policy, or edict. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). "Customs" are practices so permanent and well-settled as to virtually constitute law. *Monell*, 436 U.S. at 691. Regardless of whether a plaintiff is seeking to impose *Monell* liability for a policy or a custom, "it is incumbent upon a plaintiff to show that a policymaker is responsible either for the policy or, through acquiescence, for the custom." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990); *see also Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (explaining that in both methods to obtain liability under *Monell*, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom"). Here, Curry has not included allegations of any policy or custom in the complaint; therefore, he has failed to assert a plausible claim against the GEO Group, Inc. at this

9

time. *See McTernan*, 564 F.3d at 658 (explaining that plaintiff asserting claim of municipal liability "must identify [the] custom or policy, and specify what exactly that custom or policy was").

### 2. Claims Against Warden Byrnes

Brandon also names Warden Byrnes as a defendant. To assert a plausible claim against Warden Byrnes, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. There are two theories of supervisory liability when an individual defendant is a supervisor: (1) "Individual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm[;]" and (2) "[A] supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (citation omitted). Here, Curry has not stated a claim for liability against Warden Byrnes because he does not mention the warden in the body of the complaint. As such, the court must dismiss Curry's claims against Warden Byrnes because he does not allege that he was personally involved in any of the claimed constitutional violations or that he is a policymaker who established a policy, practice or custom which directly caused constitutional harm to Curry.

### 3. Claims Against CID

Curry also appears to assert claims against CID, referring to the Criminal Investigation Division of the Delaware County District Attorney's Office. *See* CID Organizational Chart,

https://www.delcoda.com/investigations/cid-organizational-chart. Curry suggests that CID violated his due process rights by waiting to charge him until two months after the drugs were allegedly found in his pants. To state a claim against the CID, Curry must allege that the CID violated his constitutional rights because of a custom or policy that it adopted. *See Brown v. Easton*, No. CIV.A. 99-4294, 2001 WL 722144, at *2–3 (E.D. Pa. June 25, 2001) (analyzing plaintiff's section 1983 claims against CID to determine whether defendants (including CID) were entitled to summary judgment based on arguments that plaintiff failed to show unlawful policy or custom and that policy or custom proximately caused plaintiff's injuries). Curry has failed to do this in the complaint; therefore, he cannot maintain his claims against CID at this time.

### 4. Claims Against C.O. McCann

Curry's final set of claims are against C.O. McCann. Curry appears to fault C.O. McCann for placing him in a cell with no running water and no toilet. Thus, it appears that Curry is asserting a claim based on the conditions of his confinement.

The Eighth Amendment governs claims brought by convicted inmates challenging their conditions of confinement, while the Due Process Clause of the Fourteenth Amendment governs claims brought by pretrial detainees. *See Hubbard v. Taylor (Hubbard I)*, 399 F.3d 150, 158 n.13, 166 (3d Cir. 2005). Here, although it appears likely that Curry was a pretrial detainee during the relevant period, Curry does not state his status during his incarceration; therefore, the court will analyze his allegations under both amendments.

To establish a constitutional violation under the Fourteenth Amendment, a pretrial detainee plaintiff would have to plausibly allege that the challenged conditions of confinement amount to punishment. *See Bell v. Wolfish*, 441 U.S. 520, 538 (1979) ("In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation

of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee."). When analyzing whether a condition of confinement amounts to punishment, the inquiry generally turns on whether the challenged conditions have a purpose other than punishment and whether the conditions are excessive in relation to that purpose. *See id.* at 538–39 ("A court must decide whether the [particular restriction or condition accompanying pretrial detention] is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose."); *Hubbard I*, 399 F.3d at 158 (discussing analysis of whether condition of confinement constitutes punishment for Fourteenth Amendment purposes).[6] In addition, the court should consider the totality of the circumstances in assessing whether a prisoner's conditions of confinement violate the Fourteenth Amendment. *See Hubbard v. Taylor (Hubbard II)*, 538 F.3d 229, 236, 238 (3d Cir. 2008) (examining totality of circumstances to determine whether conditions of confinement constitute Fourteenth Amendment violation); *Nami v. Fauver*, 82 F.3d 63, 67 (3d Cir. 1996) (explaining that "to determine whether conditions of confinement violate the Eighth Amendment, it is necessary to examine the totality of the conditions at the institution"); *Union Cty. Jail Inmates v. DiBuono*, 713 F.2d 984, 1000–01 (3d Cir. 1983) (discussing that "the overall length of confinement is only one factor among several that must be considered by a district court in evaluating the totality of circumstances relevant to any alleged constitutional deficiency in shelter").

---

[6] The *Bell* Court also explained:
> Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]. Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment. Conversely, if a restriction or condition is not reasonably related to a legitimate goal- if it is arbitrary or purposeless-a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees.

441 U.S. at 538–39 (internal quotation marks, citations, and footnote omitted).

As for the Eighth Amendment, conditions of confinement violate the Eighth Amendment's prohibition on cruel and unusual punishment if they satisfy two criteria. First, the conditions "must be, objectively, sufficiently serious" such that a "prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citations and internal quotation marks omitted). Second, the official responsible for the challenged conditions must exhibit a "sufficiently culpable state of mind," which "[i]n prison-condition cases . . . is one of deliberate indifference to inmate health or safety." *Id.* (citations and internal quotation marks omitted).

Here, the court cannot conclude that Curry has plausibly alleged a constitutional violation based on the conditions of his confinement. Being deprived of a toilet can rise to the level of a deprivation of basic human needs to sustain an Eighth Amendment claim. *See, e.g.*, *Johnson v. Lewis*, 217 F.3d 726, 731–33 (9th Cir. 2000) (concluding that four-day period of toilet deprivation could constitute substantial deprivation of basic human needs). Here, however, Curry does not allege any facts as to how long C.O. McCann deprived him of a toilet or running water. These facts are essential to maintaining this claim. *See id.* ("[W]e have no doubt that toilets can be unavailable for some period of time without violating the Eighth Amendment . . . ."). Curry has also failed to allege that the placement in a cell without running water or a toilet amounted to punishment or deprived him of any basic human needs for a significant period. *See, e.g.*, *Collier v. Adams*, 602 F. App'x 850, 851 (3d Cir. 2015) ("[W]e agree with the District Court that [the plaintiff] failed to show that the deprivation of running water in his cell for 77 hours was sufficiently serious." (citation and internal quotation marks omitted)); *McCray v. Witting*, Civ. A. No. 14-0824 (WJM), 2014 WL 1607355, at *3 (D.N.J. Apr. 24, 2014) (concluding that "[b]ecause Plaintiff was confined in the holding cell under deplorable conditions for only two days . . . without

13

bedding, cleaning supplies, articles of personal hygiene or adequate food . . ., and he did not suffer any physical injury, his allegations do not show that he was unconstitutionally punished, *i.e.*, the facts alleged in the Complaint do not show that Plaintiff endured privation and hardship over an extended period of time"); *George v. Faber*, Civ. A. No. 09-962 (NLH), 2010 WL 2740299, at *4 (D. Del. July 12, 2010) (dismissing conditions of confinement claim as frivolous where, *inter alia*, plaintiff had "no running water [and] no toilet (just a hole in the ground)" and a "cell with no toilet paper and lack of water" from "September 2009 until February 2010"). Accordingly, the court will dismiss Curry's claims against C.O. McCann relating to his conditions of confinement.

While unclear, Curry also appears to suggest that C.O. McCann violated his rights by falsely telling CID that drugs were found in Curry's pocket during a strip search at GWHCF.[7] As noted above, this claim implicates Curry's pending criminal proceedings, as he alleges that the charges he is facing arose from C.O. McCann's false information. *See* Docket, *Commonwealth v. Curry*, No. CP-23-CR-6464-2017 (C.P. Delaware). When a plaintiff's criminal case is still ongoing, the court must stay rather than dismiss a plaintiff's civil rights action seeking damages, pending the outcome of his criminal proceedings. *See Williams v. Hepting*, 844 F.2d 138, 144–45 (3d Cir. 1988). Therefore, the court will stay all further proceedings in this matter until Curry's criminal case has been resolved.

### III. CONCLUSION

For the foregoing reasons, the court will grant Curry leave to proceed *in forma pauperis* and dismiss all his claims except for the claim that C.O. McCann violated his rights by falsely

---

[7] Curry also vaguely suggests that unidentified defendants violated his due process rights when prison staff, in contravention of the GWHCF handbook, continued to question him despite his having committed a violation of state law. *See* Compl. at ECF p. 5. While unclear, it appears that C.O. McCann may have been one of the staff members who questioned him. Even if Curry was asserting a claim against C.O. McCann based on this questioning, "a prison's departure from the policies and procedures outlined in the facility's handbook does not, in and of itself, amount to a constitutional violation actionable under § 1983." *Laufgas v. Speziale*, Civ. A. No. 04-cv-1697 (PGS), 2006 WL 2528009, at *9 (D.N.J. Aug. 31, 2006).

telling CID that drugs were found in Curry's pocket during a strip search at GWHCF. Because this claim implicates the proceedings in Curry's pending criminal case, the court will stay all further proceedings in this case until Curry informs the court that this criminal case is resolved, including all available appellate proceedings.[8]

The court will enter a separate order.

BY THE COURT:


/s/ *Edward G. Smith*
EDWARD G. SMITH, J.

---

[8] Upon receiving notice of the completion of the criminal proceedings from Curry, the court will enter an appropriate order to move the case forward, which will very likely include providing Curry with leave to file an amended complaint to the extent that he can cure some of the potentially curable defects identified in the complaint.